FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ALEXANDRA S.,

      Plaintiff,

      v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[1]

      Defendant.

No. 2:20-CV-00477-ACE

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**ECF Nos. 20, 22**

    **BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 20, 22. Attorney Dustin D. Deissner represents Alexandra S. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

    On May 29, 2018, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging disability since April 2, 2016,

---

    [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

1    due to hip problems, hand/wrist/arm problems, neck problem, knee problem,

2    headaches, back problem, ankle problem, shoulder problem, and PTSD.  Tr. 335,

3    340, 361.  The application was denied initially and upon reconsideration.

4    Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on May 12,

5    2020, Tr. 93-159, and issued an unfavorable decision on June 3, 2020, Tr. 50-61.

6    The Appeals Council denied Plaintiff's request for review on October 29, 2020.

7    Tr. 1-7.  The ALJ's June 2020 decision thus became the final decision of the

8    Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §

9    405(g).  Plaintiff filed this action for judicial review on December 29, 2020.  ECF

10   No. 1.

### STATEMENT OF FACTS

12        Plaintiff was 34 years old on the amended disability onset date, April 2,

13   2016.  Tr. 321-322.  Plaintiff's disability report indicates she earned a GED in

14   1999, Tr. 362, worked as a welder for several years, Tr. 363, and stopped working

15   on April 1, 2016, because of her condition, Tr. 361.

16        Plaintiff testified at the administrative hearing on May 12, 2020, that she did

17   not have a valid driver's license but would still operate a vehicle on occasion.  Tr.

18   102.  She had been in drug treatment a year prior to the hearing but admitted she

19   had continued to use methamphetamine once every couple of months, with last use

20   possibly occurring in February 2020.  Tr. 103-106.  Plaintiff stated she had been

21   unable to secure pain and ADHD medication and believed she functioned better

22   when using methamphetamine.  Tr. 143-145.  This last proposition was also

23   advanced by her appellate counsel.  *See* ECF No. 20 at 3, 6.

24        With respect to her physical impairments, Plaintiff stated she continued to

25   have pain from injuries sustained in a 2002 motor vehicle accident.  Tr. 118-119.

26   She testified she had pain in her knees, neck, back, foot, wrist, hip and pelvis and

27   experienced frequent migraine headaches.  Tr. 131-132.  As a result, she indicated

28   ///

1    she could stand for only a minute or two at a time, Tr. 131, walk less than a block

2    at one time, Tr. 132, and sit for only three to five minutes at a time.  Tr. 132.

3         As to her mental health problems, Plaintiff testified PTSD and anxiety

4    interfered with her ability to function.  Tr. 124.  She stated ADHD, a borderline

5    personality disorder, and depression also caused her difficulty.  Tr. 126.  Plaintiff

6    indicated she had problems interacting with others and had daily verbal

7    disagreements/conflicts with others.  Tr. 126-127, 129.  She testified she also had

8    poor memory/recall and difficulty with focus and concentration, Tr. 133-135, did

9    not do well with change in her routine, Tr. 136, and had difficulty with sleep, Tr.

10   138-140.

11                          **STANDARD OF REVIEW**

12        The ALJ is tasked with "determining credibility, resolving conflicts in

13   medical testimony, and resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035,

14   1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with

15   deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*,

16   201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed

17   only if it is not supported by substantial evidence or if it is based on legal error.

18   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

19   defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at

20   1098.  Put another way, substantial evidence "is such relevant evidence as a

21   reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

22   *Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305

23   U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational

24   interpretation, the Court may not substitute its judgment for that of the ALJ.

25   *Tackett*, 180 F.3d at 1098; *Morgan v. Commissioner of Social Sec. Admin.*, 169

26   F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative

27   findings, or if conflicting evidence supports a finding of either disability or non-

28   disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d

1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. § 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 3, 2020, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 2, 2016, the alleged onset date.  Tr. 52.

At step two, the ALJ determined Plaintiff had the following severe impairments:  reconstructive surgery on weight bearing joints; fractures of the lower extremities; dysfunction of major joints; arthropathies; posttraumatic stress disorder (PTSD); anxiety disorder; attention deficit hyperactivity disorder (ADHD); depressive disorder; and substance addiction disorder.  Tr. 53.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 53.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light exertion level work with the following limitations: she is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments; she is limited to no contact with the public; she is capable of working in proximity to but not in coordination with coworkers and occasional contact with supervisors; she is limited to occasional stooping, crouching, balancing, crawling, and kneeling; she is limited to no climbing ramps, stairs, ropes, ladders, or scaffolds; and she is limited to no working at heights or working in proximity to hazardous conditions.  Tr. 54.

At step four, the ALJ found Plaintiff was not able to perform any past relevant work.  Tr. 59.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of housekeeping cleaner, marker-retail/wholesale, and assembler small products.  Tr. 59-60.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act from April 2, 2016, the alleged disability onset date, through June 3, 2020, the date of the ALJ's decision.  Tr. 60-61.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

///

1      It appears Plaintiff contends the Commissioner erred: (1) in his

2   consideration of Plaintiff's subjective symptom allegations; and (2) in the weight

3   accorded to the medical opinions of Thomas Genthe, Ph.D., and Patrick Metoyer,

4   Ph.D.  ECF No. 20.

5                                    **DISCUSSION**

6   **A.    Plaintiff's Subjective Complaints**

7      Plaintiff challenges the ALJ's rejection of her subjective complaints.  ECF

8   No. 20 at 6-8.  Defendant responds that the ALJ reasonably discounted Plaintiff's

9   subjective allegations.  ECF No. 22 at 3-5.

10      It is the province of the ALJ to make credibility determinations.  *Andrews*,

11   53 F.3d at 1039.  However, the ALJ's findings must be supported by specific

12   cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

13   affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

14   testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th

15   Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what

16   testimony is not credible and what evidence undermines the claimant's

17   complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

18   1993).

19      In this case, the ALJ found Plaintiff's medically determinable impairments

20   could reasonably be expected to cause some of the alleged symptoms; however,

21   Plaintiff's statements concerning the intensity, persistence and limiting effects of

22   those symptoms were not entirely consistent with the medical and other evidence

23   of record.  Tr. 55.

24      The ALJ found Plaintiff's physical complaints were out of proportion to the

25   objective medical evidence of record, Tr. 56, and that there were multiple

26   inconsistencies with Plaintiff's mental health allegations as well, Tr. 57.

27      A lack of supporting objective medical evidence is a factor which may be

28   considered in evaluating an individual's credibility, provided it is not the sole

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

1   factor.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Robbins v. Soc. Sec.*

2   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  Moreover, "[c]ontradiction with the

3   medical record is a sufficient basis for rejecting the claimant's subjective

4   testimony."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.

5   2008).

6          Plaintiff testified she experienced debilitating pain from injuries sustained in

7   a 2002 motor vehicle accident, Tr. 118-119, and could stand for only a minute or

8   two at one time, Tr. 131, walk less than a block at one time, Tr. 132, and sit for

9   only three to five minutes at one time.  Tr. 132.  However, as noted by the ALJ, the

10  injuries sustained in the 2002 motor vehicle accident did not prevent her from

11  performing her job as a welder from at least 2006 to 2016 (Tr. 363); clinical

12  presentations during the relevant time period were usually normal/minimally

13  abnormal including normal gait, normal range of motion, and full strength of the

14  upper and lower extremities (Tr. 742, 937, 981, 1029, 1038, 1041, 1052-1053,

15  1206-1207, 1239, 1262, 1369, 1424, 1436, 1483-1484); imaging suggested no

16  acute abnormalities (Tr. 820-826, 949-954); and, in fact, Plaintiff reported in April

17  2018 that she could walk without difficulty (Tr. 935).  Tr. 56.  The ALJ also noted

18  the most recent medical records continued to show generally normal clinical

19  presentation such as good range of motion in all major joints, normal gait, full

20  strength, and intact sensation (Tr. 1198, 1206-1207).  Tr. 56.

21         Plaintiff also testified her mental impairments of PTSD, anxiety, ADHD,

22  borderline personality disorder, and depression affected her ability to function, Tr.

23  124, 126, causing her to have difficulty interacting with others, poor memory, and

24  problems with focus and concentration, Tr. 126-127, 129, 133-135.  However, as

25  indicated by the ALJ, although some records revealed problems in those areas (Tr.

26  966-967, 1122, 1146, 1158), other medical records showed less notable

27  abnormalities or essentially normal mental status exams (Tr. 692, 696, 701, 707,

28  716, 737, 742, 937, 1020, 1038, 1053, 1080, 1203, 1207, 1239, 1247, 1415, 1433,

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

1448, 1475).  Tr. 57.  The ALJ also noted Plaintiff's ongoing methamphetamine use was inconsistent with her mood and anxiety complaints.  Tr. 57.  Plaintiff's documented methamphetamine use throughout the relevant time period suggests her mental health symptoms may have been from illegal drug use rather than any alleged impairment.

As asserted by Defendant, ECF No. 22 at 6, Plaintiff has not specifically contested these findings by the ALJ.  The Court ordinarily will not consider matters on appeal that are not specifically challenged in an opening brief, *Carmickle*, 533 F.3d at 1161 n.2, and will not "manufacture arguments for an appellant," *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).  Nevertheless, based on the Court's review of the record, and specifically the citations noted above, the Court finds substantial evidence supports the ALJ's finding that Plaintiff's physical and mental limitation allegations were not consistent with the objective medical evidence of record.

The ALJ also noted Plaintiff failed to follow through with recommended treatment.  Tr. 56.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment may cast doubt on a claimant's subjective complaints.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The record reflects Plaintiff missed or cancelled nearly half of her physical therapy appointments for her alleged shoulder pain.  Tr. 766.  Plaintiff's failure to comply with medical treatment prescribed by her physicians was a legitimate reason for the ALJ to discount her claim of disabling pain and limitations.

The ALJ also referred to Plaintiff's medication seeking behavior.  Tr. 56.  An ALJ may consider that a claimant engaged in drug-seeking behavior when deciding to discount a claimant's statements about the severity of symptoms.  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  Plaintiff's drug seeking behavior as reflected in the record, *see* Tr. 690 (Plaintiff demanded

1    narcotic pain medication for knee pain at an emergency room); Tr. 733 (Plaintiff

2    complained when being prescribed only Tylenol for pain), was an additional valid

3    reason, supported by substantial evidence, for discounting her subjective

4    complaints.

5         Finally, the ALJ noted inconsistencies in Plaintiff's administrative hearing

6    testimony.  Tr. 57.  Inconsistencies in a disability claimant's testimony supports a

7    decision by the ALJ that a claimant lacks credibility with respect to her claim of

8    disabling pain.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).  The ALJ

9    determined Plaintiff's responses to questions about her $11,500 in earnings in 2018

10   and $11,200 in earning in 2019 were implausible, i.e., that the earnings resulted

11   solely from the sale of her assets during that time.  Tr. 57, 110-113.  The ALJ

12   found that the sale of assets already owned by an individual do not constitute

13   income but just an exchange of one item of value for another.  Tr. 57.  The ALJ

14   also determined that Plaintiff presented implausible testimony about riding in a

15   long-haul truck across several states for over two weeks but that all she did during

16   that time was lay in the bed of the cab of the truck.  Tr. 57, Tr. 114-117.

17   Here, Plaintiff provided detailed information where it was of assistance to her case

18   while denying knowledge and memory of prior statements that harmed her case.

19   She showed a particular facility in threading the needle between developing a

20   record of disability while not imperiling a pending state Department of Health and

21   Human Services child welfare action.  *See* Tr. 103, 107, 138.  An objective viewer

22   could reasonably conclude she was not a reliable historian of past events, another

23   appropriate reason to discount her subjective complaints in this case.

24        Plaintiff's briefing argues the ALJ erred by considering her use of public

25   transportation (point-to-point handicapped bus) and her performance of activities

26   of daily living when weighing her credibility.  ECF No. 20 at 6.  However, a

27   review of the ALJ's decision reveals the ALJ did not rely on Plaintiff's use of

28   ///

1   public transportation or activities when addressing her credibility in this case.  Tr.

2   55-57.

3      The ALJ is responsible for reviewing the evidence and resolving conflicts or

4   ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

5   1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in

6   evidence.  *Richardson*, 402 U.S. at 400.  The Court has a limited role in

7   determining whether the ALJ's decision is supported by substantial evidence and

8   may not substitute its own judgment for that of the ALJ even if it might justifiably

9   have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  After

10   reviewing the record, and based on the foregoing, the Court finds that the ALJ

11   provided clear and convincing reasons, which are fully supported by the record, for

12   finding Plaintiff's symptom allegations were not entirely credible in this case.

13   **B.**      **Medical Opinion Evidence**

14      It appears Plaintiff also contends the ALJ erred by failing to give legally

15   sufficient reasons for rejecting the medical opinion of Thomas Genthe, Ph.D., and

16   for improperly assessing the opinion of Patrick Metoyer, Ph.D.  ECF No. 20 at 2-5;

17   ECF No. 23 at 3.  Defendant responds that the ALJ reasonably considered the

18   opinions of Drs. Genthe and Metoyer.  ECF No. 22 at 9-14.

19      For claims filed on or after March 27, 2017, new regulations apply that

20   change the framework for how an ALJ must weigh medical opinion evidence.

21   *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

22   168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new

23   regulations provide the ALJ will no longer give any specific evidentiary weight to

24   medical opinions or prior administrative medical findings, including those from

25   treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ will consider

26   the persuasiveness of each medical opinion and prior administrative medical

27   finding, regardless of whether the medical source is an acceptable medical source.

28   20 C.F.R. § 416.920c(c).  The ALJ is required to consider multiple factors,

1  including supportability, consistency, the source's relationship with the claimant,

2  any specialization of the source, and other factors (such as the source's familiarity

3  with other evidence in the file or an understanding of Social Security's disability

4  program). *Id.* The regulations make clear that the supportability and consistency

5  of the opinion are the most important factors, and the ALJ must articulate how she

6  considered those factors in determining the persuasiveness of each medical opinion

7  or prior administrative medical finding. 20 C.F.R. § 416.920a(b). The ALJ may

8  explain how she considered the other factors, but the ALJ is not required to except

9  in cases where two or more opinions are equally well-supported and consistent

10  with the record. *Id.*

11      Supportability and consistency are further explained in the regulations as

12  follows:

13
14      (1) *Supportability.* The more relevant the objective medical evidence
        and supporting explanations presented by a medical source are to
15      support his or her medical opinion(s) or prior administrative medical
        finding(s), the more persuasive the medical opinions or prior
16      administrative medical finding(s) will be.

17
18      (2) *Consistency.* The more consistent a medical opinion(s) or prior
        administrative medical finding(s) is with the evidence from other
19      medical sources and nonmedical sources in the claim, the more
20      persuasive the medical opinion(s) or prior administrative medical
        finding(s) will be.

21
22  20 C.F.R. § 416.920c(c).

23      **1.    Dr. Genthe**

24      On August 27, 2018, Dr. Genthe completed a Psychological/Psychiatric

25  Evaluation. Tr. 961-969. No records were provided for Dr. Genthe's review, Tr.

26  961, and Plaintiff reported to weekly methamphetamine use at that time with her

27  last use occurring one week prior to the evaluation. Tr. 962. Dr. Genthe opined

28  that Plaintiff had marked limitations in several areas of functioning, Tr. 964, and

1  was unlikely to function adequately and/or consistently in a work setting until her

2  psychological symptoms were managed more effectively, Tr. 965.

3         As noted by the ALJ, Dr. Genthe reviewed no records prior to his

4  examination of Plaintiff.  Tr. 58.  Consequently, the functional limitations were

5  assessed by Dr. Genthe without the support of a longitudinal understanding of

6  Plaintiff's mental health.  Moreover, the substantial functional limitations assessed

7  by Dr. Genthe were not consistent with the mental/psychiatric examination results

8  of Plaintiff's many medical visits, *see* Tr. 692, 696, 701, 707, 716, 737, 742, 937,

9  1020, 1038, 1053, 1080, 1203, 1207, 1239, 1247, 1415, 1433, 1448, 1475.  Tr. 58.

10 Finally, as correctly observed by the ALJ, the results of Dr. Genthe's PAI

11 suggested some symptom exaggeration by Plaintiff during the evaluation.  Tr. 58,

12 1188.  Accordingly, as correctly determined by the ALJ, the persuasiveness of Dr.

13 Genthe's Psychological/Psychiatric Evaluation is undermined by a lack of support

14 and inconsistency with other record evidence.  The Court finds the ALJ did not err

15 by finding Dr. Genthe's opinion unpersuasive.

16         **2.    Dr. Metoyer**

17        On September 24, 2018, Plaintiff was evaluated by Patrick Metoyer, Ph.D.

18 Tr. 970-974.  Dr. Metoyer reviewed records, Tr. 971, examined Plaintiff, and

19 opined that Plaintiff had some mild and moderate impairments, Tr. 974.  He

20 determined that Plaintiff's ability to deal with the usual stress encountered in the

21 workplace would be markedly impaired if it involved persistent activity, complex

22 tasks, task pressure, and interacting with others.  Tr. 974.

23        The ALJ found Dr. Metoyer's opinion persuasive, finding it mostly

24 consistent with the mental status examinations of record and the longitudinal

25 record as a whole, which supported mild to moderate limitations.  Tr. 58.  With

26 respect to Dr. Metoyer's assessed marked limitation, the ALJ specifically indicated

27 his RFC assessment accounted for the finding by limiting Plaintiff to simple tasks

28 with no contact with others.  Tr. 58.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

1    It appears Plaintiff argues the ALJ's RFC determination did not adequately

2    account for Dr. Metoyer's assessed moderate limitations because "moderate" was

3    not defined in Dr. Metoyer's report.  ECF No. 20 at 4.  However, the Ninth Circuit

4    has concluded that an ALJ may synthesize and translate assessed limitations into

5    an RFC assessment (and subsequently into a hypothetical to the vocational expert)

6    without repeating each functional limitation verbatim in the RFC assessment or

7    hypothetical.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir.

8    2008) (holding that an ALJ's RFC assessment that a claimant could perform

9    simple tasks adequately captured restrictions related to concentration, persistence,

10   or pace, because the assessment was consistent with the medical evidence).  The

11   ALJ considered the limitations opined by Dr. Metoyer and reasonably found

12   Plaintiff capable of performing only unskilled, repetitive, routine tasks in two-hour

13   increments, with no contact with the public, only occasional contact with

14   supervisors, and working in proximity to but not in coordination with coworkers.

15   Tr. 54.  The Court finds the ALJ's RFC determination reasonably incorporated the

16   limitations identified by Dr. Metoyer.  Even if this Court could have evaluated the

17   evidence differently, the Court defers, as it must, to the ALJ's reasonable and

18   rational resolution of any ambiguities and inconsistencies.  *See Tommasetti v.*

19   *Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 683

20   (9th Cir. 2005); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

**CONCLUSION**

22   Having reviewed the record and the ALJ's findings, the Court finds the

23   ALJ's decision is supported by substantial evidence and free of error.

24   Accordingly, **IT IS HEREBY ORDERED:**

25   1.    Defendant's Motion for Summary Judgment, **ECF No. 22**, is

26   **GRANTED**.

27   2.    Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

28   ///

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for DEFENDANT and the file shall be CLOSED**.

DATED January 24, 2023.



_____

ALEXANDER C. EKSTROM

UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 14